IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-02725-WJM-MDB

ISRAEL DEL TORO,
KATHLEEN CLAYTON,
LUKE SORENSEN,
NATHANEL SKIVER,
JASON REEVES,
GARRETT FLICKER, and
the COLORADO STATE SHOOTING ASSOCIATION ("CSSA"),

    Plaintiffs,

v.

JARED SCHUTZ POLIS, in his official capacity as
the Governor of the State of Colorado,
PHILIP JACOB WEISER in his official capacity as
the Attorney General of the State of Colorado, and
MICHAEL J. ALLEN, in his official capacity as
the District Attorney for the Fourth Judicial District, and
LAURA CLELLAN, in her official capacity as the Acting
Director of the Colorado Division of Parks and Wildlife,

    Defendants.

---

### DEFENDANT MICHAEL J. ALLEN'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO Fed. R. Civ. P. 12(b)(1) and (6)

---

Defendant, Michael J. Allen, in his official capacity as the District Attorney for Colorado's Fourth Judicial District (hereinafter "DA Allen"), submits this Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 33) under Fed. R. Civ. P. 12(b)(1) and (6), as Plaintiffs lack standing to bring this lawsuit against DA Allen and they fail to state a claim against DA Allen upon which relief can be granted. In support thereof, DA Allen states as follows:

**Duty to Confer Under D.C.COLO.LCivR.7.1(a)**

Undersigned counsel conferred extensively with Plaintiffs' counsel via videoconference on November 25, 2025 (prior to the filing of the First Amended Complaint); via a phone call with Plaintiffs' counsel on December 11, 2025; and an email exchange on February 25, 2026. Each of the conferrals involved discussion as to DA Allen's primary position that the Plaintiffs lack standing to bring their claims against DA Allen and fail to state a claim against DA Allen in that, their Amended Complaint (and now First Amended Complaint) failed to plead that Plaintiffs intend to perform acts violative of the criminal provisions of the Act. Plaintiffs object to this motion.

## I.   INTRODUCTION

On September 2, 2025, Plaintiffs filed a lawsuit against Defendants Governor Jared Schutz Polis ("Gov. Polis"), Attorney General Phillip Jacob Weiser ("AG Weiser"), and DA Allen in the United States District Court for the District of Colorado. Plaintiffs' lawsuit challenges the constitutionality of Colorado's "Act Concerning the Prohibition of Certain Semiautomatic Firearms and Rapid-Fire Devices," Senate Bill 25-003 (hereinafter, the "Act"), which was enacted by the Legislature of the State of Colorado and signed into law by Gov. Polis on April 10, 2025. On December 22, 2025, Plaintiffs filed a First Amended Complaint ("FAC") which brings many of the same constitutionality claims as set forth in their original Complaint.

The Act[1] makes unlawful the manufacture, distribution, transfer, sale, or purchase of specified semiautomatic firearms unless the individual involved in the transaction has first acquired a Firearms Safety Course Eligibility Card, cleared additional background checks,

---

[1] The full text of the Act is set forth in Exhibit C to Plaintiffs' FAC (Doc. 31-3). Hereinafter, unless specifically designated otherwise, all references to the provisions of the Act are identified by their statutory designation, C.R.S. § _____.

2

completed safety courses, and passed an instructor-administered exam with a passing score of at least 90%. The Act also includes provisions which prohibit the sale and purchase of all rapid-fire conversion devices, and makes the transfer, purchase, sale or possession of large-capacity magazines unlawful. Plaintiffs assert in their FAC that the Act burdens their right to keep and bear arms, and as such is unconstitutional under the Second Amendment to the United States Constitution, as made applicable to the states by the Fourteenth Amendment.

The Act codifies certain criminal penalties for conduct violative of the Act, to wit, C.R.S. § 18-12-116(4) criminalizes the unlawful manufacture, distribution, transfer, sale, or purchase of a specified semiautomatic firearm without having the requisite permit; C.R.S. § 18-12-116(5)(b)(IV) criminalizes making a false or misleading statement on a firearms safety course eligibility card application (under C.R.S. § 18-8-503 – perjury);[2] C.R.S. § 18-12-302(1) increases the criminal penalty for the sale, transfer, or possession of a large-capacity magazine from a class 2 misdemeanor to a class 1 misdemeanor;[3] and C.R.S. § 18-12-102(1) which substitutes the term "rapid fire device" (*see* C.R.S. § 18-12-101(1)(u.3)) for that of "machine gun conversion device" as a "dangerous weapon," the possession of which is a class 5 felony (C.R.S. § 18-12-102(3)). The criminal penalties codified in § 18-12-102 (rapid fire devices) and 18-12-302 (large capacity magazines) were effective as of April 25, 2025, but the criminal provisions of § 18-12-116 are not effective until August 1, 2026. As the District Attorney for the Fourth Judicial District, DA Allen is the prosecuting authority for violations of the Act occurring within that jurisdiction.

---

[2] Plaintiffs' First Amended Complaint does not challenge this specific provision of the Act except that, if the provisions of the Act requiring a Firearms Safety Course Eligibility Card is found unconstitutional and repealed, this provision, making false or misleading statements on the application for a Firearms Safety Course Eligibility Card, becomes moot.

[3] The Plaintiffs are not challenging the constitutionality of Section 8 of the Act, which enhances the criminal penalty for selling, transferring, or possessing a large capacity magazine from a Class 2 Misdemeanor to a Class 1 Misdemeanor. *See* FAC, p. 3.

As it pertains to DA Allen, Plaintiffs, via their First Amended Complaint, challenge the prospective application of the criminal provisions of the Act, specifically those pertaining to the unlawful manufacture, distribution, transfer, sale, or purchase of a specified semiautomatic firearm (§ 18-12-116(4)) and the knowing possession of a rapid fire device/dangerous weapon (§ 18-12-102), to their future conduct. As it pertains to DA Allen, Plaintiffs seek injunctive relief from enforcement of the criminal provisions of the Act by DA Allen against them individually.

## II.  MATERIAL FACTS

**A.  The Individual Plaintiffs.**[4]

**1. Plaintiff Del Toro:**

a.  "Mr. Del Toro relies on common firearm accessories like force-reset triggers to enable him to operate a firearm." FAC, p. 5, ¶2.

b.  "Under the provisions of the Act, forced reset triggers, and all other 'rapid-fire devices,' have now been classified as 'dangerous weapons,' possession of which is a class 5 felony." *Id.*

c.  Mr. Del Toro relies on the AR platform semiautomatic pistol with stabilizing brace. *Id.*

d.  "When Mr. Del Toro wishes to acquire one of these firearms in the future, he will have to submit to the complicated burdensome and costly permit-to-purchase scheme established by the Act." *Id.*

e.  "The Act provides no accommodations or exceptions [to the permit requirements] for disabled persons." *Id.*

f.  "Mr. Del Toro has the right to defend himself in the way that is most practical given his physical disability." *Id.*

g.  "Mr. Del Toro intends to purchase additional specified semiautomatic firearms after August 1, 2026; specifically, semiautomatic rifles with pistol grips…." *Id.*

---

[4] The facts listed below pertaining to the individual Plaintiffs, DA Allen, and CSSA are extracted from the "Parties" section of the FAC. They are not set forth within the "Factual Allegations" section of the FAC. The extracted facts relate strictly to the lack of standing issue raised by DA Allen.

4

    h.    "[T]he training and additional financial burdens of the Act will make it significantly more difficult for him [to acquire specified semiautomatic firearms] after the Act goes into full effect and may even dissuade him entirely from purchasing another semiautomatic firearm after August 1, 2026…." FAC, p. 6, ¶3.

2. **Plaintiff Sorenson:**

    a.    "Mr. Sorenson is a 19-year-old college student with limited financial resources." FAC, p. 6, ¶4.

    b.    Under the Act "Mr. Sorenson will not have an opportunity to purchase one of the specified semiautomatic firearms" until after August 1, 2026, the Act goes into full effect and he turns twenty-one.[5] *Id.*, pp. 6-7, ¶4.

    c.    Mr. Sorenson intends to purchase a semiautomatic handgun once he reaches the age of twenty-one. *Id.*, p. 7, ¶4.

    d.    By the time Mr. Sorenson is twenty-one, he will have to meet the requirements of the Act to purchase a semiautomatic firearm, but the "additional fees and training costs" may be prohibitive to him as a college student. *Id.*

3. **Plaintiff Skiver:**

    a.    Mr. Skiver's current role as a firearms instructor requires him to frequently acquire semi-automatic firearms. FAC, p. 7, ¶5.

    b.    "[D]epending on his business income over the coming year[,] Mr. Skiver intends to purchase additional 9mm handguns to have available for his clients' firearms training purposes." *Id.*

    c.    "As a firearms instructor, Mr. Skiver is not only familiar with semiautomatic firearms, but extremely well-trained and proficient in their function and use." *Id.*

    d.    The Act "does not exempt Mr. Skiver from its permit-to-purchase training requirements." *Id.*

    e.    Due to its provisions, "the Act will likely cause the semiautomatic firearm purchase rate to decline in Colorado over the coming years" which "will inevitably reduce the job opportunities and income Mr. Skiver makes as a firearms instructor."

---

[5] The requirement that Mr. Sorenson be 21 years old to purchase a firearm is not included in the Act. It is codified in C.R.S. § 18-12-112, effective August 7, 2023. Plaintiffs' FAC does not challenge the constitutionality of § 18-12-112.

4. **Plaintiff Reeves:**

   a. Mr. Reeves is "a veteran and a former law enforcement officer" with "credential[s] allowing him to carry a concealed firearm nationwide, as well as a Colorado issued concealed handgun permit." FAC, p. 8, ¶6.

   b. Mr. Reeves is "not exempt[ ] from the Act's permit-to-purchase requirements." *Id.*

   c. Mr. Reeves "intends to acquire [ ] 'specified semiautomatic firearms' after the provisions of the Act are fully implemented." *Id.*

   d. Mr. Reeves avers that "it is a virtual certainty that he will purchase a semiautomatic firearm after August 1, 2026." *Id.*

   e. "Mr. Reeves owns several rapid-fire devices, including a forced reset trigger, 'super-safety' trigger systems and binary triggers; devices which the Act now classifies as 'dangerous weapons,' possession of which is a class 5 felony." *Id.*

5. **Plaintiff Flicker:**

   a. Mr. Flicker is a board member of CSSA who has a history of purchasing semiautomatic firearms in Colorado. FAC, p. 8, ¶7.

   b. Mr. Flicker plans to purchase additional semiautomatic firearms for himself [ ] after the provisions of the Act are fully implemented on August 1, 2026." *Id.*

   c. Mr. Flicker will be prohibited from purchasing additional semiautomatic firearms after August 1, 2026, unless he follows the provisions of the Act. *Id.*

6. **Plaintiff CSSA:**

   a. CSSA is the official state association of the National Rifle Association ("NRA"). FAC, p. 9, ¶8.

   b. CSSA "brings this action on behalf of its members [the individually named Plaintiffs] who have been adversely and directly harmed by enforcement of the Act." *Id.*

B. **Defendant Allen.**

   a. DA Allen "is the District Attorney for the State of Colorado's 4th Judicial District." FAC, p. 10, ¶11.

   b. "As the elected District Attorney for the 4th Judicial Circuit [*sic*], he is tasked with prosecuting individuals who commit crimes against the State of Colorado – including violations of the Act – in the counties making up the 4th Judicial Circuit [*sic*]." *Id.*

    c.    "All of the individual Plaintiffs in this case live in the 4th Judicial Circuit [*sic*]." *Id.*

    d.    "The District Attorney's future enforcement of the Act across the 4th Judicial Circuit [*sic*] places Plaintiffs under imminent threat of arrest and prosecution should they violate one or more of the Act's provisions." *Id.*

**C.**    **The Statutes.**

    a.    **§ 18-12-101(1)(u.3)**: "Rapid-fire device" means any device, part, kit, tool, accessory, or combination of parts that has the effect of increasing the rate of fire of a semiautomatic firearm above the standard rate of fire for the semiautomatic firearm that is not otherwise equipped with that device, part, or combination of parts.

    b.    **§ 18-12-101(1) (u.7)**: "Semiautomatic firearm" means a firearm that is not a machine gun and that, upon initiating the firing sequence, fires the first chambered cartridge and uses a portion of the energy of the firing cartridge to extract the expended cartridge case, chamber the next round, and prepare the firing mechanism to fire again, and requires a separate pull, release, push, or initiation of the trigger to fire each cartridge. "Semiautomatic firearm" includes a semiautomatic rifle, semiautomatic shotgun, or semiautomatic handgun.

    c.    **§ 18-12-102**: (1) As used in this section, the term "dangerous weapon" means a firearm silencer, machine gun, rapid-fire device, short shotgun, or short rifle. (3) A person who knowingly possesses a dangerous weapon commits a class 5 felony.

    d.    **§ 18-12-116(2)**: On or after August 1, 2026, it is unlawful for any person to knowingly manufacture, distribute, transfer, sell, or purchase a specified semiautomatic firearm; except that a person may sell or transfer a specified semiautomatic firearm to an individual residing in another state or a federally licensed firearm dealer.

    e.    **§ 18-12-116(3)**: Subsection (2) of this section does not apply to: (e) The transfer or sale of a specified semiautomatic firearm to, and receipt or purchase of a specified semiautomatic firearm by: (I) A person who: (A) Completed a hunter education course certified by the division of parks and wildlife, as described in section 33-6-107(8), and, within five years before making the purchase, completed a basic firearms safety course described in subsection (5) of this section; (B) Within five years before making the purchase, completed an extended firearms safety course described in subsection (5) of this section; or (C) Completed an extended firearms safety course more than five years before making the purchase and completed a basic firearms safety course within five years before making the purchase;

      f.    **§ 18-12-116(4)**: (a) A person who violates subsection (2) of this section commits unlawful manufacture, distribution, transfer, sale, or purchase of a specified semiautomatic firearm. (b) Unlawful manufacture, distribution, transfer, sale, or purchase of a specified semiautomatic firearm is a class 2 misdemeanor; except that a second or subsequent offense is a class 6 felony.

### III.    LEGAL STANDARD

**A.**    <u>**Rules 12(b)(1) and 12(b)(6)**</u>**.**

"Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim for lack of subject-matter jurisdiction, mounting either a facial or factual attack. A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction." *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir., 2020); *Laufer v. Looper*, 22 F.4th 871 (10th Cir., 2022) (Party filing motion to dismiss for lack of Article III standing may challenge the district court's subject matter jurisdiction through facial or factual attack.). "In order for a claim to be justiciable under Article III, it must be shown to be a ripe controversy. Ripeness is peculiarly a question of timing, … intended to forestall judicial determinations of disputes until the controversy is presented in clean-cut and concrete form." *New Mexicans for Bill Richardson v. Gonzales* ["*New Mexicans*"], 64 F.3d 1495, 1499 (10th Cir., 1995) (internal citations and quotation marks omitted). Under both doctrines Plaintiffs bear the burden of establishing the court's subject matter jurisdiction. *New Mexicans*, 64 F.3d at 1499; *Baker*, 979 F.3d at 871.

When Plaintiffs' allegations fail to set forth a set of facts that, if true, would entitle them to relief, a complaint must be dismissed under Rule 12(b)(6). *See Ash Creek Mining Co. v. Lujan*, 969 F.2d 868, 870 (10th Cir. 1992); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678−79 (2009) (holding that a claim must be facially plausible to survive a motion to dismiss).

B.      **Article III Standing.**

Federal courts are courts of limited jurisdiction. Article III of the United States Constitution, provides federal courts with jurisdiction to only hear certain "cases" and "controversies." *Susan B. Anthony List* ["SBA List"] *v. Driehaus*, 573 U.S. 149, 157 (2014); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."). Article III courts are therefore "duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *Wilderness Soc. v. Kane Cnty.*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). A federal court must resolve jurisdictional issues before reaching the merits. *United States v. Springer*, 875 F.3d 968, 973 (10th Cir. 2017). Standing "is evaluated as of the time a case is filed." *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1161 (10th Cir., 2023).

"To satisfy Article III's case-or-controversy requirement, a plaintiff must demonstrate standing to sue by establishing '(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir., 2016) quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *Spokeo*, 578 at 338. "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating" each element." *Id.* at 338 quoting *Warth v. Seldin,* 422 U.S. 490, 518 (1975). Where a statute's alleged violation is "undisputedly traceable to the statute itself and could be redressed by this Court's invalidation of the law," only the injury-in-fact requirement is at issue. *Peck v. McCann*, 43 F.4th 1116, 1129 (10th Cir., 2022). Injury in fact helps ensure that the plaintiff has a personal stake in the outcome of the litigation. *SBA List*, 573 U.S. at 158.

9

"Typically, pre-enforcement challenges are brought against an existing law under which the plaintiff has previously been prosecuted, an existing law where the plaintiff has yet to be prosecuted or an enacted law before it takes effect." *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 110 (10th Cir., 2024) (internal citations omitted). "For such a suit to be justiciable, the plaintiff must establish both (1) an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the challenged] statute, and (2) that there exists a credible threat of prosecution thereunder." *Rocky Mountain Gun Owners*, 121 F.4th at 110 (internal quotation marks omitted) citing *SBA List* at 159.

"Regarding the former requirement, the plaintiff must present 'concrete plans to engage in conduct that ha[s] [the] potential to violate' the challenged statute once it goes into effect." *Rocky Mountain Gun Owners*, 121 F.4th at 110 quoting *Colo. Outfitters Ass'n*, 823 F.3d at 551. "Speculative plans or vague intentions to *potentially* violate the challenged statute are insufficient." *Id.* at 110 (*Emphasis* in original) citing *Lujan*, 504 U.S. at 564 ("'[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." (*emphasis* in original)).

## IV.     ARGUMENT

As an initial matter, DA Allen advises that he is not taking a position on the constitutionality of the Act as a whole. Rather, he is leaving that fight for Gov. Polis and AG Weiser. DA Allen's role in this case is strictly related to his position as the prosecuting authority for violations of the criminal provisions of the Act (C.R.S. §§ 18-12-116(4) and 18-12-102). DA Allen alleges that Plaintiffs lack Article III standing due to their failure to show an injury in fact

as they fail to plead conduct that would be violative of the Act and/or that would subject them to a credible threat of prosecution.

A. **Plaintiffs Lack Article III Standing.**

Each Plaintiff bears the burden to establish his own standing. *Rocky Mountain Gun Owners*, *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) ("The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."). In order to meet the injury in fact element to establish their own standing each Plaintiff must "offer something more than the hypothetical possibility of injury. The alleged injury must be concrete, particularized, and actual or imminent." *Colo. Outfitters*, 823 F.3d at 544. "[I]mminence is...a somewhat elastic concept, [but] it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted, *emphasis* in original).

When bringing a Second Amendment pre-enforcement challenge to a Colorado criminal statute, the Supreme Court has said there must be, "circumstances that render the threatened enforcement *sufficiently imminent*," and the plaintiff must demonstrate, (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the challenged] statute," and (2) "there exists a credible threat of prosecution thereunder." *SBA List*, 573 U.S. at 159 (*emphasis* added) quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Here, the individual Plaintiffs do not allege "circumstances that render the threatened enforcement [of the criminal provisions of the Act] *sufficiently imminent*" or that "there exists a credible threat of prosecution" for conduct which is proscribed by the Act. First and foremost, the individual Plaintiffs have not plead conduct that is prosecutable under Section 2 of the Act.

11

1. **The Individual Plaintiffs have not Plead Intended Conduct that would Violate the Act and Trigger a Prosecution under C.R.S. § 18-12-116(4).**

The Act proscribes the manufacture, distribution, transfer, sale, or purchase of a specified semiautomatic firearm "unless they have first acquired a 'Firearms Safety Course Eligibility Card,' and have completed at least one of three forms of firearms safety courses. After completing these safety courses, applicants are then required to pass an instructor-administered exam with a passing score of at least ninety percent. As part of this permit-to-purchase process, the Act also mandates an additional background check to be completed by a third-party vendor, as well as the payment of 'processing' and 'card' fees." FAC, p. 3; C.R.S. § 18-12-116(2),(3),(5). A person who violates subsection these provisions "commits unlawful manufacture, distribution, transfer, sale, or purchase of a specified semiautomatic firearm" and commits "a class 2 misdemeanor; except that a second or subsequent offense is a class 6 felony." C.R.S. § 18-12-116(4).

    a.    *Plaintiff Del Toro:*

Plaintiff Del Toro pleads an intent "to purchase additional specified semiautomatic firearms after August 1, 2026; specifically semiautomatic rifles with pistol grips…". FAC, p. 5, ¶2. The Act does not proscribe or criminalize the purchase of specified semiautomatic firearms so long as the purchaser has acquired the requisite permit. *See* FAC, p. 3; C.R.S. § 18-12-116(2),(3),(5). Plaintiff Del Toro does not plead that he intends to make the purchases after August 1, 2026, without first obtaining the requisite permit. Rather, Plaintiff Del Toro pleads: "the training and additional financial burdens of the Act will make it significantly more difficult for him [to acquire specified semiautomatic firearms] after the Act goes into full effect and may even dissuade him entirely from purchasing another semiautomatic firearm after August 1, 2026…." FAC, p. 6, ¶3.

Neither does Plaintiff Del Toro allege any "circumstances that render the threatened enforcement [of the criminal provisions of the Act] *sufficiently imminent*" for conduct which is proscribed by the Act. *See supra.*, pp. 5-6, § II(A)(1)(a)-(h). None of the intended conduct plead by Plaintiff Del Toro is prosecutable under the Act. Therefore, there cannot be "a credible threat of prosecution." Absent a credible threat of prosecution that is sufficiently imminent, Plaintiff Del Toro lacks standing to present a claim against DA Allen as it relates to Section 2 of the Act (C.R.S. § 18-12-116).

      b.    *Plaintiff Sorenson:*

Plaintiff Sorenson pleads that he "intends to purchase a semiautomatic handgun once he reaches the age of twenty-one." FAC, p. 7, ¶4.

      c.    *Plaintiff Skiver:*

Plaintiff Skiver pleads that "depending on his business income over the coming year[,] [he] intends to purchase additional 9mm handguns to have available for his clients' firearms training purposes." FAC, p. 7, ¶5. Plaintiff Skiver is not exempt from the Act's permit to purchase training requirements (*Id.*).

      d.    *Plaintiff Reeves:*

Plaintiff Reeves avers that "it is a virtual certainty that he will purchase a semiautomatic firearm after August 1, 2026." FAC, p. 8, ¶6. Plaintiff Reeves is "not exempt[ ] from the Act's permit to purchase requirements" (*Id.*).

      e.    *Plaintiff Flicker:*

Plaintiff Flicker "plans to purchase additional semiautomatic firearms for himself [ ] after the provisions of the Act are fully implemented on August 1, 2026." FAC, p. 8, ¶7. Plaintiff Flicker "will be prohibited from purchasing additional semiautomatic firearms after August 1, 2026, unless he follows the provisions of the Act. (*Id.*).

Like Plaintiff Del Toro, none of the additional individual Plaintiffs (Sorenson, Skiver, Reeves, and Flicker) plead any intended conduct that is prosecutable under Section 2 of the Act (C.R.S. § 18-12-116), nor do they plead any circumstances showing a sufficiently imminent, credible threat of prosecution. *See SBA List*, 573 U.S. at 159.

Plaintiffs' assertion that DA Allen's "future enforcement of the Act across the 4th Judicial Circuit places Plaintiffs under imminent threat of arrest and prosecution should they violate one or more of the Act's provisions" (FAC, p. 10, ¶11), cannot save their standing claim as the assertion is nothing but a "naked assertion" devoid of "further factual enhancement" which is insufficient to meet the pleading standard required by *Iqbal* and *Twombley*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-557 (2007) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"). While, for purposes of this motion to dismiss the Court must take all factual allegations in the complaint as true, the Court is not bound to accept as true Plaintiffs' legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678 citing *Twombley*, 550 U.S. at 555. Plaintiffs' legal conclusion couched as a factual allegation simply does not rise to the level of showing a "sufficiently imminent," "credible threat of prosecution" so as to support Plaintiffs' standing. *See SBA List*, 573 U.S. at 159; *Iqbal*, 556 U.S. at 679 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").

Accordingly, like Plaintiff Del Toro, all individually named Plaintiffs lack standing to present a claim against DA Allen related to Section 2 (C.R.S. § 18-12-116) of the Act.

2. **The Individual Plaintiffs have not Plead any Circumstances Showing a Sufficiently Imminent, Credible Threat of Prosecution Under C.R.S. § 18-12-102 for Possession of a Dangerous Weapon.**

The Act makes it a crime, as of April 25, 2025, to possess a "dangerous weapon" in the state of Colorado. C.R.S. § 18-12-102(3) ("A person who knowingly possesses a dangerous weapon commits a class 5 felony."). Included in the dangerous weapons proscribed by the Act are "rapid-fire device[s]." C.R.S. § 18-12-102(1) ("As used in this section, the term "dangerous weapon" means a … rapid-fire device …."). A "'rapid fire device' means any device, part, kit, tool, accessory, or combination of parts that has the effect of increasing the rate of fire of a semiautomatic firearm above the standard rate of fire for the semiautomatic firearm that is not otherwise equipped with that device, part, or combination of parts." C.R.S. § 18-12-101(1)(u.3).

   a.   *Plaintiffs Sorenson, Skiver, Flicker:*

Neither Plaintiffs Sorenson, Skiver or Flicker allege that they now possess or that they intend to possess a rapid-fire device or any other dangerous weapon prosecutable pursuant to C.R.S. § 18-12-102. As Plaintiffs Sorenson, Skiver and Flicker do not plead any intended conduct that is prosecutable under Section 9 of the Act (C.R.S. § 18-12-102), nor do they plead any circumstances showing a sufficiently imminent, credible threat of prosecution, they lack standing to present a claim against DA Allen related to Section 9 (C.R.S. § 18-12-102) of the Act. *SBA* List, 573 U.S. at 159.

   b.   *Plaintiff Del Toro:*

Plaintiff Del Toro alleges that he "relies on common firearm accessories like force-reset triggers to enable him to operate a firearm." FAC, p. 5, ¶2. Plaintiff Del Toro alleges that "[u]nder the provisions of the Act, forced reset triggers" fall within the definition of a rapid-fire device (C.R.S. § 18-12-101(1)(u.3)) and are now classified as a dangerous weapon under the Act (C.R.S. § 18-12-102). FAC, p. 5, ¶2. While Plaintiff Del Toro does allege that he relies on force reset

15

triggers while operating a firearm he does not allege that he now possesses any of those devices or that he intends to possess them in the future. Nor does Plaintiff Del Toro allege any facts showing that he is under a sufficiently imminent, credible threat of prosecution for his use of the device while operating a firearm. *See* §IV(A)(1), *supra*, arguing DA Allen's future enforcement of the Act. Accordingly, Plaintiff Del Toro, lacks standing to present a claim against DA Allen related to Section 9 (C.R.S. § 18-12-102) of the Act. *SBA* List, 573 U.S. at 159.

  c. *Plaintiff Reeves:*

Plaintiff Reeves asserts that he "owns several rapid-fire devices, including a forced reset trigger, 'super-safety' trigger systems and binary triggers; devices which the Act now classifies as 'dangerous weapons,' possession of which is a class 5 felony." FAC, p. 8, ¶6. While Plaintiff Reeves sufficiently pleads the first element for standing in a Second Amendment pre-enforcement challenge ("an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the challenged] statute" (*SBA List*, 573 U.S. at 179), he does not allege any facts showing that he is under a sufficiently imminent, credible threat of prosecution for his possession of the device. *See* §IV(A)(1), *supra*, arguing DA Allen's future enforcement of the Act. Accordingly, Plaintiff Reeves lacks standing to present a claim against DA Allen related to Section 9 (C.R.S. § 18-12-102) of the Act. *SBA* List, 573 U.S. at 159.

  **3. The Entity Plaintiff (CSSA) has not Pled Intended Conduct that would Violate the Act and Trigger a Prosecution.**

Plaintiff CSSA asserts that it "is the official state association of the National Rifle Association (NRA)." FAC, p. 9, ¶8. It claims that it "brings this action on behalf of its members, including [the individual Plaintiffs], who have and will be adversely and directly harmed by the Defendants' enforcement of the Act challenged herein." *Id.*

16

In Colorado:

> (1) a business entity is guilty of a[ ] [criminal] offense if:
>
> (a) The conduct constituting the offense consists of an omission to discharge a specific duty of affirmative performance imposed on the business entity by law; or
>
> (b) The conduct constituting the offense is engaged in, authorized, solicited, requested, commanded, or knowingly tolerated by the governing body or individual authorized to manage the affairs of the business entity or by a high managerial agent acting within the scope of his or her employment or in behalf of the business entity.

C.R.S. § 18-1-606 (2026).

CSSA has not pled any facts that would make it subject to the criminal provisions of the Act, nor has it pled any facts that show it is under a sufficiently imminent, credible threat of prosecution for violations of the Act. *See* §IV(A)(1), *supra*, arguing DA Allen's future enforcement of the Act. Accordingly, Plaintiff CSSA lacks standing to present a claim against DA Allen related to the enforcement of the criminal provisions of the Act. *SBA* List, 573 U.S. at 159.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' First Amended Complaint against DA Allen must be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) as they lack standing to challenge the provisions of the Act which criminalize the purchase of specified semiautomatic firearms without first obtaining the requisite permit and possession of rapid fire devices (as dangerous weapons) because they failed to plead any intended conduct that is violative of the Act and/or they failed to show a sufficiently imminent, credible threat of prosecution by DA Allen. *SBA List*, 573 U.S. at 159.

WHEREFORE, DA Allen respectfully requests this Court enter an order dismissing Plaintiffs' First Amended Complaint with prejudice, together with DA Allen's reasonable costs and attorneys' fees as permitted by law, and such other and further relief the Court deems just and proper.

RESPECTFULLY SUBMITTED this 3rd day of March 2026.

                                OFFICE OF THE COUNTY ATTORNEY
                                OF EL PASO COUNTY, COLORADO

By:    */s/ Bryan E. Schmid*
          Bryan E. Schmid, Reg. No. 41873
          Senior County Attorney
          Nathan J. Whitney, Reg. No. 39002
          First Assistant County Attorney
          200 S. Cascade Ave.
          Colorado Springs, CO 80903
          Phone: (719) 520-6485
          Fax: (719) 520-6487
          bryanschmid@elpasoco.com
          nathanwhitney@elpasoco.com
          *Attorneys for Defendant Michael J. Allen*

## CERTIFICATE OF SERVICE

  I hereby certify that on March 3, 2026, I electronically filed the foregoing **DEFENDANT MICHAEL J. ALLEN'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO Fed. R. Civ. P. 12(b)(1) and (6)** with the Clerk of Court using the CM/ECF system which will serve a copy on all CM/ECF participants, as follows:

Michael D. McCoy
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, CO 80227
mmccoy@mslegal.org
*Attorney for Plaintiffs*

Emily Burke Buckley, Senior Assistant Attorney General
Lane Towry, Assistant Attorney General
Kyle M. Holter, Assistant Attorney General
Public Officials Unit | State Services Section
Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway Denver, CO 80203
Emily.buckley@coag.gov
lane.towery@coag.gov
kyle.holter@coag.gov
*Attorneys for Defendants Jared Schutz Polis,*
*Philip Jacob Weiser, and Laura Clellan, in their*
*respective official capacities*

                */s/ Meleah Williams*
                Paralegal