**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-02725-WJM-MDB

ISRAEL DEL TORO, LUKE SORENSEN, NATHANAEL SKIVER, JASON REEVES, GARRETT FLICKER, and the COLORADO STATE SHOOTING ASSOCIATION,

*Plaintiffs*,

v.

JARED SCHUTZ POLIS, in his official capacity as Governor of the State of Colorado; PHILIP JACOB WEISER, in his official capacity as Attorney General of the State of Colorado; MICHAEL J. ALLEN, in his official capacity as the District Attorney for the Fourth Judicial District; and LAURA CLELLAN, in her official capacity as the Acting Director of Colorado Parks and Wildlife,

*Defendants*.

---

**DECLARATION OF TELLER COUNTY SHERIFF JASON MIKESELL**

---

I, Jason Mikesell, being over 18 years of age, submit the following declaration and state as follows:

1. I make this declaration based on my personal knowledge.

2. I currently serve as the elected Sheriff of Teller County, Colorado. I have served in this position since May 25, 2017.

3. I am aware that on April 10, 2025, Governor Polis signed SB25-003 into law.

4. The new law, in part, established a permit-to-purchase process that Colorado residents must complete to purchase a “specified semiautomatic firearm.”

5. The permit-to-purchase process became effective on August 1, 2026.

6. Before SB25-003 became law, I testified at each of three hearings for the bill. I provided primary testimony, testified at the bill's final reading, and testified at a fiscal hearing against SB25-003.

7. While I testified on several aspects of the bill during the hearings, my primary focus was on the fiscal impact that the permit-to-purchase scheme would have on my office in Teller County. At the time, we believed that Teller County could not afford to implement SB25-003.

8. Despite my testimony, the bill passed and was signed into law.

9. In January 2026, the sheriff's office analyzed the costs that it would incur to implement the permit-to-purchase scheme.

10. The sheriff's office found that it required additional staff to implement and operate the program. Specifically, the sheriff's office needed to hire two administrative assistants, a law enforcement detective, and an information technology technician. Additionally, the sheriff's office would have to purchase a new software management system and a multi-card system.

11. In sum, Teller County assessed the cost of the first-year program to be $587,958.29. After the first year, the program's estimated annual operating costs are estimated to be $433,055.41.

12. In December 2025, when Teller County completed its 2026 budget year planning, it did not account for the cost of the permit-to-purchase program. Further, Teller County's budget and tax revenue is not sufficient to support these costs.

13. On February 4, 2025, I contacted Laura Clellan, the Acting Director of the Colorado Division of Parks and Wildlife, to ask that the State of Colorado pay for the county's costs to implement the state-mandated permit-to-purchase system.

In my letter, I explained the county's fiscal situation and that it required state funds to establish the program's necessary infrastructure.

14. On February 12, 2026, my office received a response from Acting Director Clellan. Acting Director Clellan notified me that Teller County is responsible for setting its own sheriff's processing fees to account for the cost of the permit-to-purchase process.

15. I believe that, in order to cover the cost of the permit-to-purchase scheme, I would have to charge a fee amounting to approximately $400 per application.

16. I do not believe that I can charge applicants $400 and cover the cost of the program because it will be too expensive for many residents to pay, and I expect it would unconstitutionally burden their Second Amendment rights.

17. In addition to the costs of the permit-to-purchase program, I am concerned about the third-party vendors that will be providing background-check results for sheriffs to review.

18. As I understand the statute, applicants must secure a "name-based background check" from a third-party vendor before applying to the sheriff's office for an eligibility card. I also understand that the statute requires the initial background check to return results from national and Colorado public criminal history and judicial databases.

19. As a county sheriff, I am familiar with the background check procedure, and I am aware that national public criminal history and judicial databases are not accessible to investigators using only name-based checks.

20. As I understand the statute, sheriffs are required to review the results of name-based background checks, but I am unclear whether sheriff's offices should

be receiving the results of a name-based background check or the results of a more expansive background check after an investigation of national databases.

21. Beyond the language of the statute itself, I am concerned that any third-party vendors operating in Colorado cannot satisfy the statute's background check requirements. My office has only identified one third-party vendor that we know is operating in the state, TruDiligence, and I do not believe that their background check results satisfy the statute's minimum standards.

22. In light of the potentially invalid background check results that the sheriff's office would be receiving from applicants who relied on third-party vendors, I am also concerned about my potential liability if I approve a resident's eligibility card application and he later uses a firearm to endanger himself or others.

23. In addition to the background check issues, I am concerned that I have not received guidance from CPW on how to exercise my statutory discretion to approve or deny applications.

24. As I understand the statute, sheriffs must issue an eligibility card to an applicant unless the sheriff believes that the applicant may be a danger to themselves or to others. I know of no objective standard or other criteria by which to evaluate an applicant's potential to endanger themselves or others and, therefore, I am unsure of how to properly exercise this statutory discretion.

25. Finally, my office has had several callers inquire about approved trainers. I do not know how to direct applicants who request information on where to complete the firearms safety courses required by the statute.

26. Teller County only has one firing range, and we do not have any trainers who are currently qualified to complete the statutory training requirement.

27. I am unsure of how to assess which trainers in other counties may be qualified to complete the training for applicants.

28. Given the significant ambiguity surrounding the permit-to-purchase process, I am not currently accepting resident applications for eligibility cards.

29. I have no timeline on when we may be able to begin to process applications, and I do not know what to tell residents asking me how to complete the process.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 10, 2026, in Woodland Park, Colorado.

*s/Jason Mikesell*
Jason Mikesell
Sheriff, Teller County, Colorado