**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-02725-WJM-MDB

ISRAEL DEL TORO, LUKE SORENSEN, NATHANAEL SKIVER, JASON REEVES, GARRETT FLICKER, and the COLORADO STATE SHOOTING ASSOCIATION,

*Plaintiffs*,

v.

JARED SCHUTZ POLIS, in his official capacity as Governor of the State of Colorado; PHILIP JACOB WEISER, in his official capacity as Attorney General of the State of Colorado; MICHAEL J. ALLEN, in his official capacity as the District Attorney for the Fourth Judicial District; and LAURA CLELLAN, in her official capacity as the Acting Director of Colorado Parks and Wildlife,

*Defendants*.

---

**DECLARATION OF CUSTER COUNTY SHERIFF LLOYD RICH SMITH**

---

I, Lloyd Rich Smith, being over 18 years of age, submit the following declaration and state:

1. I make this declaration based on my personal knowledge.

2. I currently serve as the elected Sheriff of Custer County, Colorado. I have served in this position since August 2022.

3. I am aware of SB25-003, and I know that the law's permit-to-purchase scheme went into effect on August 1, 2026.

4. Local sheriff's offices have a key role in the new permit-to-purchase process. If a resident wishes to purchase a covered semiautomatic firearm, he must submit to my office the results of a third-party vendor's background check and an application. Sheriffs are responsible for reviewing the application, determining

whether the applicant poses a danger to himself or to others, and approving or denying the application on that basis. Once a sheriff approves an applicant, the sheriff issues a firearms safety course eligibility card, which enables the applicant to complete the permit-to-purchase program's required training. The applicant must complete that training before he can purchase a covered semiautomatic firearm.

5. While I am sympathetic because the Colorado Department of Parks and Wildlife, which is responsible for facilitating this process, was thrust into a difficult position, the permit-to-purchase roll-out has been poorly executed. I received no guidance from the state regarding background checks, the sheriff's review of eligibility card applications, training, or any other aspect of the new permitting program.

6. To ensure that Custer County would be prepared for the roll-out, I sent my most senior deputy to Denver numerous times to participate in every single CPW event related to the permit-to-purchase process that I could identify, and I prepared our office for the permit-to-purchase roll-out.

7. The Custer County Sheriff's Office is a small, rural office.

8. The sheriff's office has a limited budget, which must be allocated to higher priorities, including maintaining the safety of the residents of Custer County. For example, several years ago, when my office could not afford patrol vehicles, county residents stepped up to raise funds so that we could purchase suitable patrol vehicles for my on-duty personnel.

9. Overall, the annual budget for our department is $2 million. Throughout my time in office, I have worked with neighboring counties so that our office can minimize its expenses and optimize its budget, and our county is proud of the sheriff's force that we have built.

10. SB25-003 imposes a severe financial burden on the Custer County Sheriff's Office because it increases our fiscal responsibilities without providing a reasonable means to pay for the increased costs.

11. To participate in the permit-to-purchase process, at a minimum the sheriff's office will need to hire one employee to manage the permit-to-purchase process. To offset that cost, I intend to charge a $25 application fee when residents apply to my office for their eligibility card. I do not anticipate the $25 application fee will offset the administration cost of the application process.

12. I have not decided whether I will charge higher fees to applicants from other counties. If I do, it will only be a fee sufficient to ensure that Custer County residents are not paying for my office to process applications from residents from other counties.

13. Despite the financial difficulty, I am currently accepting applications from residents who are working through the permit-to-purchase process.

14. I am concerned about the third-party vendor background checks. Under the statute, I believe that the background checks are supposed to be name-based checks. Name-based background checks introduce the risk that two individuals with the same name may appear in the state database, and I am concerned that law-abiding citizens may receive a false positive on their background check report.

15. I also am concerned that residents have no way of challenging erroneous information on their background check and that I do not have a way of contacting third-party vendors directly to resolve any issues with a resident's background check results.

16. I sent an email to TruDiligence—the only third-party vendor that I know operating in Colorado—and shared my misgivings. TruDiligence responded that they did not have procedures in place for addressing my concerns.

17. Further, I am uncertain as to how I am to evaluate applications to determine whether an individual is a danger to himself or others. The state has not provided any guidance on how to exercise that discretion.

18. I know that some sheriffs have decided not to accept applications altogether because of their lack of clarity regarding the proper use of sheriff's discretion.

19. In our county, we have individuals who have negligently fired rounds and engaged their firearms in ways that risked injury to themselves and others. I am not sure whether such conduct would be sufficient to deny that individual's application if he applied for an eligibility card.

20. Right now, I believe that the proper way to assess each application is to approve the application unless the applicant is a convicted felon or is adjudicated mentally incompetent. I plan to rely on that standard to exercise my discretion.

21. Because my office was proactive in contacting CPW before the roll-out began, I ensured that Custer County has three firearms instructors who are certified to complete the firearms safety courses for the permit-to-purchase process.

22. I intend to begin providing training courses for county residents as soon as possible, but we are not currently providing training courses.

23. Although I am hesitant to charge residents for exercising their constitutional rights, I expect that I will need to charge a fee of at least $200 to cover the cost of the instructor's training time.

24. I plan to limit class sizes to 15 applicants at a time to ensure that I have a sufficient instructor-to-student ratio in each course.

25. I am not sure how frequently I will offer the course.

26. Overall, I do not see a benefit to the permit-to-purchase program. I believe that the program's costs, duplicate background checks, and procedural delays unconstitutionally burden the rights of Custer County residents.

27. I am concerned that the Second Amendment rights of Custer County residents have become second-class constitutional rights. For example, individuals and churches in my county do not need to pay to exercise their freedom of religion. Also, residents are allowed to engage in other dangerous activities that are not constitutionally protected, yet most of those activities do not require safety classes.

28. The impact of this permit-to-purchase program is already being felt in Custer County.

29. Custer County has two federally licensed firearm retailers. The larger of those retailers is expecting to go out of business; her once-thriving Main Street shop is already up for sale.

30. I am also expecting that lower-income Custer County residents will be unable to afford the fees associated with the new scheme (background checks, processing and recording fees, and training fees), and I am concerned that they will lose access to their constitutional rights based on their economic status.

31. Finally, given the uncertainty of the permit-to-purchase process, I have given significant thought to simply not accepting applications. My present belief is, if I do not accept applications, I am putting a severe burden on the Second Amendment rights of Custer County residents because they will be unable to apply through my office to purchase a covered semiautomatic firearm.

32. On the other hand, if I accept applications, I am still subjecting Custer County residents to the burdens of increased costs and waiting times associated with the permit-to-purchase process.

33. Ultimately, I decided to accept applications. I am approaching the implementation of the permit-to-purchase program in a way that I hope will minimize the unconstitutional burden to the rights of Custer County residents.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 10, 2026, in Westcliffe, Colorado.

LR Smith

Lloyd Rich Smith
Sheriff, Custer County, Colorado