**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-02725-WJM-MDB

ISRAEL DEL TORO, LUKE SORENSEN, NATHANAEL SKIVER, JASON REEVES, GARRETT FLICKER, and the COLORADO STATE SHOOTING ASSOCIATION,

*Plaintiffs*,

v.

JARED SCHUTZ POLIS, in his official capacity as Governor of the State of Colorado; PHILIP JACOB WEISER, in his official capacity as Attorney General of the State of Colorado; MICHAEL J. ALLEN, in his official capacity as the District Attorney for the Fourth Judicial District; and LAURA CLELLAN, in her official capacity as the Acting Director of Colorado Parks and Wildlife,

*Defendants*.

---

**DECLARATION OF TODD LOCKBURNER**

---

I, Todd Lockburner, being over 18 years of age, submit the following declaration and state:

1. I make this declaration based on my personal knowledge.

2. I live in Colorado Springs, Colorado, and I am a resident of El Paso County.

3. I am the Chief Operating Officer of Magnum Shooting Center.

4. I am an individual member of the Colorado State Shooting Association, and Magnum Shooting Center is a business member of Colorado State Shooting Association.

5. Magnum sells firearms to the general public and offers training and range opportunities at two locations in Colorado Springs.

6. Magnum also offers memberships. Members enjoy specialty and discounted services and sales.

7. I am aware that SB25-003's permit-to-purchase process became effective on August 1, 2026.

8. As I understand SB25-003, the law requires residents to complete an application process that includes a third-party background check, sheriff review, and firearms safety training before they can purchase a "specified semiautomatic firearm" at a federally licensed firearms dealer. Even once that process is complete, the purchaser must undergo a second background check at the point of sale and wait three days before taking possession of the purchased firearm.

9. I understand that a customer may not purchase or receive any covered semiautomatic firearm after August 1, 2026, without completing the permit-to-purchase process.

10. On July 28, 2026, to account for the state's three-day waiting period, Magnum stopped selling covered semiautomatic firearms to customers who had not completed the permit-to-purchase process.

11. Among Magnum patrons, there seems to be widespread confusion about SB25-003. In fact, since we stopped selling covered firearms on July 28, 40 to 50 people per day enter our shop to purchase a covered firearm and are unaware of the new permit-to-purchase process.

12. Of the patrons who are aware of the new process, at least 70% have indicated to me that they are concerned about buying a covered firearm because they believe they are being put on a registry and they are unclear about which firearms are subject to the program.

13. I believe that most of Magnum's existing customers do not intend to complete the permit-to-purchase process or purchase covered semiautomatic firearms in the future.

14. I believe that this change in customer buying behavior will have a significant impact on Magnum's business.

15. Historically, Magnum has sold approximately 500 firearms per year that are now considered specified semiautomatic firearms under SB25-003. We are expecting to lose approximately $600,000 in annual revenue as a result of SB25-003.

16. In addition to offering retail firearm sales, Magnum offers firearms training at both of its Colorado Springs locations.

17. Historically, Magnum offered training for concealed handgun permits; church safety fundamentals; interactions with law enforcement; handgun handling, safety, and operation; marksmanship; semiautomatic firearm fundamentals; defensive handgun training; youth programs; and numerous additional courses.

18. All of Magnum's training courses are designed to emphasize the fundamentals of safety first as well as to teach and sharpen the skills and concepts required for effective firearm use.

19. Given Magnum's full and extensive training schedule, I normally need to schedule training about one month in advance of the course offering.

20. Magnum plans to offer both the four- and twelve-hour firearms safety courses required by SB25-003.

21. Until recently, I was uncertain of the full extent of the permit-to-purchase program's requirements, and I did not have a copy of the curriculum. Once I received a copy of the curriculum and our instructors were able to review it, I

scheduled permit-to-purchase training for the soonest date that Magnum could accommodate.

22. Magnum struggled to schedule these courses. I had to find three days each month that I would be able to offer the specific courses, and these days had to be on weekends to maximize customers' ability to participate in the course. Our schedule was also already filled with exciting training offerings. Ultimately, I cancelled several weekend training courses and scheduled the required firearms safety courses in their place because I felt strongly that citizens in our community needed to have access to the courses to minimize the burden on their rights.

23. Given our previous training schedule, the earliest that Magnum was able to schedule the safety courses was late August 2026.

24. I am not sure if the new safety courses will be profitable, and I do not know how many individuals will sign up for them. I currently only have three or four people signed up for the four-hour course in each of my locations, and I have similar numbers of enrollees in the twelve-hour course.

25. I plan to offer these courses once each month.

26. While Magnum can accommodate a maximum class size of 16, based on the current rate of applicant enrollment, I expect to enroll between six and eight people in each course.

27. For the four-hour course, I plan to charge $100 for members and $150 for non-members.

28. For the twelve-hour course, I plan to charge $250 for members and $350 for non-members.

29. Magnum requires applicants to schedule the courses over the phone, and they must provide their eligibility card information over the phone to reserve a

training spot. At the start of each class, Magnum will verify each applicant's eligibility card information.

30. The curriculum that I have seen from Colorado Parks and Wildlife (CPW) entails two PowerPoint slide decks, one for the 4-hour course and one for the 12-hour course. I understand that instructors cannot modify the slide decks.

31. After the instructor finishes teaching the course curriculum, I understand that he or she must proctor an examination for the attendees.

32. I understand that attendees are required to score 90% or more on the test to pass, and they must pass the test to be eligible to purchase a covered firearm.

33. I understand that there are three versions of the test. Each variant uses the same questions, but the questions and answers are in different orders.

34. I am uncertain whether the exam is an open- or closed-book examination. I know that the concealed handgun permit test involved an open-book examination. Therefore, I assume, but do not know, that this test is also supposed to be an open-book examination.

35. I have not seen any versions of the course curriculum or the exam that are offered in other languages. I have only seen an English curriculum and test.

36. Because the course is not offered in any other language, I believe that applicants who speak English as a second language will be required to hire their own interpreters for translation services during the course.

37. Further, the course curriculum and the test for the permit-to-purchase courses must be taught by certified instructors.

38. CPW did not provide information to our shop about how to certify instructors—I had to find that information on my own. I learned about the certification procedure on social media.

39. To be certified to teach the new program's firearms safety courses, instructors were required to complete both an in-person training session in Pueblo and a distinct videoconference training session.

40. After an applicant completes the firearms training and passes the required test, I understand that he may purchase a covered semiautomatic firearm.

41. I intend to verify that purchasers have completed the required permit-to-purchase training by confirming the purchaser's training information on the CPW recordkeeping platform.

42. Once I verify the purchaser completed the required training, he will still need to pay for another background check (at a cost of $15) and state and local taxes of 6.5%. These fees and costs do not include the cost of the firearm itself. Further, the purchaser must still complete a three-day waiting period after his purchase before he can accept delivery of the firearm.

43. Finally, Magnum has experienced two additional impacts of this law.

44. First, Magnum's patrons have expressed significant confusion about which firearms are covered firearms under SB25-003.

45. Based on my interactions with patrons, I believe that very few customers understand the scope of SB25-003—particularly with respect to covered firearms. About 75% of our customers believe that the list of covered firearms is more expansive than it is, many customers believe that, to purchase any firearm, they must complete the program.

46. As a result, about 75% of Magnum's patrons believe that they are unable to purchase most of my firearms inventory without participating in the program.

47. I am concerned that this lack of clarity will drive away business, because about 75% of Magnum patrons have indicated to me that they will not complete the permit-to-purchase process.

48. Second, as this and other legislation restricting firearms has gained ground in Colorado, approximately 20% of Magnum's members have told us that they either have moved out-of-state or are planning to move away from the state.

49. Although I do not have a solid count, I know that since SB25-003 passed, we have lost members specifically due to Colorado's gun laws.

50. I am concerned that the trend will persist and Magnum's members will continue to move out-of-state.

51. However, even if members do not flee Colorado, I am concerned that the increased costs imposed on covered firearm purchasers by SB25-003 will cause many of our members to decline future membership renewals.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 10, 2026, in Colorado Springs, Colorado.

Todd Lockburner