**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-02725-WJM-MDB

ISRAEL DEL TORO, LUKE SORENSEN, NATHANAEL SKIVER, JASON REEVES, GARRETT FLICKER, and the COLORADO STATE SHOOTING ASSOCIATION,

*Plaintiffs*,

v.

JARED SCHUTZ POLIS, in his official capacity as Governor of the State of Colorado; PHILIP JACOB WEISER, in his official capacity as Attorney General of the State of Colorado; MICHAEL J. ALLEN, in his official capacity as the District Attorney for the Fourth Judicial District; and LAURA CLELLAN, in her official capacity as the Acting Director of Colorado Parks and Wildlife,

*Defendants*.

---

**DECLARATION OF JOHN SHAFFER**

---

I, John Shaffer, being over 18 years of age, submit the following declaration and state:

1. I make this declaration based on my personal knowledge.

2. I live in Colorado Springs, Colorado, and I am a resident of El Paso County.

3. I am the lead instructor at Magnum Shooting Center.

4. Before I became the lead instructor, I served for twenty-eight years as a science teacher in Colorado Springs' School District 20. During my tenure in D20, I completed several special projects for the district superintendent that were focused on optimizing the learning opportunities for D20 students.

5. Magnum is a business member of Colorado State Shooting Association.

6. Magnum sells firearms to the general public and offers training and range opportunities at two locations in Colorado Springs.

7. As the lead instructor, I am responsible for creating and managing the training curriculum at Magnum Shooting Center.

8. Magnum also offers membership. Members enjoy specialty and discounted services and sales.

9. I am aware that SB25-003's permit-to-purchase process became effective on August 1, 2026.

10. As I understand SB25-003, the law requires residents to complete an application process that includes a third-party background check, a sheriff's review, and firearms safety training before they can purchase a "specified semiautomatic firearm" at a federally licensed firearms dealer. Even once that process is complete, the purchaser must undergo a second background check at the point of sale and wait three days before taking possession of the purchased firearm.

11. To ensure that residents can successfully navigate the training portion of the permit-to-purchase program, I have added both the four-hour and the 12-hour firearms safety courses to our training schedule.

12. Our first 12-hour course is scheduled for August 15 and 16 at our Magnum South location. We will offer another 12-hour course at the Magnum North location the following week.

13. Our first four-hour course is scheduled for August 23 at our Magnum South location. We will offer another four-hour course at the Magnum North location the following week.

14. I intend to continue to schedule the SB25-003 safety courses on a monthly basis at each location.

15. Each class at the Magnum South location has a maximum capacity of 16 applicants. At Magnum North, I can accommodate class sizes of 12 applicants. These limitations are based on the sizes of the classrooms that we have at each facility. I had to cancel other, higher-revenue producing courses that our members demanded to accommodate the new firearms training courses.

16. For the four-hour course, Magnum charges members $100, while non-members are charged $150.

17. For the twelve-hour course, Magnum charges members $250, while non-members are charged $350.

18. I do not know how many applicants will enroll these courses.

19. To become certified, instructors must participate in two training events offered by the Colorado Division of Parks and Wildlife—an in-person training event and a follow-on videoconference-based event.

20. I have reviewed the curriculum that CPW requires instructors to teach during the safety courses.

21. The twelve-hour course consists of 292 PowerPoint slides, while the four-hour course has substantially fewer.

22. The curriculum does not appear to focus on the safe handling or use of SB25-003's specified semiautomatic firearms. It also does not include a live-fire component or a significant session allowing applicants to handle semiautomatic firearms. For example, the course does not explain how to properly use the manual safety switch on semiautomatic firearms.

23. During the CPW training, the CPW representatives were asked whether instructors could add to the curriculum to cover extended weapons

handling. CPW firmly instructed me not to add or subtract from the issued curriculum.

24. The training curriculum is only offered in the English language, and it does not include accommodations for applicants who may have disabilities or applicants who may speak English as a second language.

25. At the conclusion of the training courses, applicants are required to take a test. The twelve-hour course exam includes 40 questions, and applicants must achieve a score of 90% to pass.

26. Applicants who miss up to eight questions are permitted to re-take those specific exam questions.

27. However, if applicants miss more than eight questions, I believe that the applicant must re-take either the whole test.

28. I am concerned that the 90% score requirement will limit the number of applicants who can successfully complete the training. I recall from my service with the Colorado Springs School District 20 that, statewide, fewer than 50% of all students were capable of reading and comprehension at grade level. Yet, in the safety courses, applicants must pass the test with the equivalent of an academic "A" to qualify to purchase a semiautomatic firearm.

29. I am concerned that the test's minimum score requirement imposes a prohibitive barrier to an applicant's ability to purchase a firearm. I do not believe that active-duty military or Colorado law enforcement officers are subject to the same rigorous testing requirement before they are certified to handle semiautomatic firearms.

30. Additionally, like the courses, the examination is only offered in the English language.

31. I recall from my time in D20 that 17 major languages are spoken in the state of Colorado, and I am concerned that most of those who speak English as a second language may be inhibited from completing the courses and test—not because they are unable to comprehend the material, but because I have no way of presenting the course or test to them in a way that they understand.

32. Also, like the course curriculum, the test provides no accommodation for applicants who may have learning disabilities that hamper classroom learning and test-taking.

33. I am concerned that these applicants, who may be perfectly safe and effective with a semiautomatic firearm, will be totally barred from purchasing a covered firearm and unable to exercise their Second Amendment rights because of their disability. These applicants have no alternative way to complete the course and exam.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 11, 2026, in Colorado Springs, Colorado.

*s/John Shaffer*
John Shaffer