**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-02725-WJM-MDB

ISRAEL DEL TORO, LUKE SORENSEN, NATHANAEL SKIVER, JASON REEVES, GARRETT FLICKER, and the COLORADO STATE SHOOTING ASSOCIATION,

*Plaintiffs,*

v.

JARED SCHUTZ POLIS, in his official capacity as Governor of the State of Colorado; PHILIP JACOB WEISER, in his official capacity as Attorney General of the State of Colorado; MICHAEL J. ALLEN, in his official capacity as the District Attorney for the Fourth Judicial District; and LAURA CLELLAN, in her official capacity as the Acting Director of Colorado Parks and Wildlife,

*Defendants.*

---

**DECLARATION OF JOSHUA MOOTHART**

---

I, Joshua Moothart, being over 18 years of age, submit the following declaration and state as follows:

1. I make this declaration based on my personal knowledge.

2. I live in Falcon, Colorado and am a resident of El Paso County.

3. I am a member of the Colorado Springs Shooting Association.

4. I am completely and profoundly Deaf. When I was a few months old, I contracted yellow jaundice, which left me totally Deaf. I have been Deaf ever since. I rely on American Sign Language (ASL) as my primary language. I do not know of any medical device or equipment that can restore any portion of my hearing.

5. ASL is a visual language. My mind is wired in ASL, which is not a linear language like English. I am weak in trying to translate reading from written English into ASL. Written English, particularly when it involves complex sentence

structures, technical terminology, or questions phrased in unfamiliar ways, is difficult for me to understand.

6. I have purchased firearms in the past, and I plan to purchase an AR-15 in the future.

7. I intend to use these firearms for lawful purposes, including home defense and firearms hobbies.

8. Based on my understanding of SB25-003, the firearms I intend to purchase—including the AR-15 and AR-10—are considered "specified semiautomatic firearms" and are subject to the permit-to-purchase scheme established by that Act.

9. Based on my current understanding, SB25-003 permit process requires me to obtain a firearms safety course eligibility card from my county sheriff, complete in-person firearms safety training, and pass a written examination with a score of at least 90%. I understand that if I do not have a hunting license, I will need to complete the full training course over two days.

10. The in-person training requirement presents a significant barrier for me as a Deaf person. I cannot hear spoken instruction. To access the content of any in-person firearms course, I require a certified ASL interpreter who is skilled at interpreting the specialized language of firearms instruction and can interpret the instructor's spoken words into ASL and interpret my signed questions back to the instructor.

11. I also need the right type of certified interpreter, one who is skilled at interpreting the technical firearms-safety content accurately. I may need to meet the interpreter ahead of time to ensure effective communication.

12. Not all certified ASL interpreters will be able to help me complete the firearms safety course. I am concerned that if the certified ASL interpreter does not

have sufficient experience and knowledge in teaching firearms safety, it would not be safe or responsible for me to take a firearms course from that interpreter.

13. Hiring a qualified ASL interpreter is expensive. For a four-hour class, interpreter costs run approximately $80 to $120 per hour. The hourly rate may vary for an all-day class. However, industry standards require that I use two interpreters, not just one, if the course is longer than two hours. Two ASL interpreters are required because the interpreters must switch off to maintain accuracy and to support each other during extended interpreting sessions.

14. I am concerned that I may need to pay for the interpreters, because that would be a significant burden for me. Yet that is what would be required for me to meaningfully access the course content. Hearing people do not have to bear this cost. They simply show up and listen. I believe it is burdensome to my constitutional right that I may have to pay this cost while hearing people do not.

15. I have not found any information indicating that the state will provide ASL interpreters for the required firearms safety courses, or that any approved training providers are required to offer ASL-accessible instruction.

16. I am also deeply concerned about the written examination. The exam requires a passing score of at least 90%. Because my first language is ASL and not English, I struggle significantly with written English. English sentences can include trick questions or unfamiliar phrasing that I cannot catch. If a question is worded in a way that is confusing or uses complex sentence structure, I may misunderstand it, not because I do not know the course material, but because of the language barrier created by my Deafness.

17. Testing is my biggest concern. If I fail the examination, I cannot purchase the desired firearm. A 90% passing threshold means that on a 20-question test, I can miss only one or two questions. Given the difficulty I have with written English, misunderstanding even one or two questions because of phrasing—not

because of a lack of knowledge about firearm safety—could prevent me from exercising my constitutional right to purchase a firearm.

18. I would need to rely on an ASL interpreter to make the written examination questions clear to me. To date, I have not found any information indicating that an interpreter will be provided during the examination, or that the examination will be offered in ASL or in a format accessible to Deaf individuals.

19. The permit-to-purchase process as a whole is too complicated and increases the risk that I will be unable to obtain a permit, particularly because of my language barrier. If the process provided clear explanations in ASL, visual demonstrations, and showed me how to complete each step correctly, I believe I would be able to pass. But without those accommodations, it may be very difficult or impossible for me to navigate the process and pass the required examination because I have no way of making sure that I understand the process, the course content, and the test correctly.

20. When I purchased firearms before SB25-003 took effect, I was able to fill out the required forms because the gun dealer knew how to sign and could help me understand what was required. If I could not have relied on a dealer who could sign or otherwise communicate with me, I would have had a very difficult time purchasing a firearm.

21. The permit process under SB25-003 imposes unique and severe burdens on my Second Amendment rights me because of my Deafness. The process assumes that applicants can hear spoken instruction, read and comprehend written English at a high level, and pass a written examination without any accommodation. It provides no alternative pathway for Deaf individuals that I am aware of. I am willing and able to safely own and use firearms, and my Deafness does not impair my ability to handle a firearm safely. But it does severely impair my ability to complete SB25-003's process as designed.

22. Hearing people can simply attend the required training, listen to the instruction, and take the written test. I cannot do any of that without significant accommodations that the state does not seem to be providing and that I cannot afford to arrange on my own. Deaf people want to have equal access and be treated just like hearing people; we should have the same abilities to exercise our constitutional rights that hearing people do. Under SB25-003, we do not.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 11, 2026, in Falcon, Colorado.

*s/Joshua Moothart*
Joshua Moothart